UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

PARNELL LEDELL MCKAY,
    Plaintiff,

vs.                                            Case No.: 3:23cv24180/LAC/ZCB

MICHAEL TONA, et al.,
    Defendants.
_____/

## REPORT AND RECOMMENDATION

    This is a *pro se* prisoner civil rights case filed under 42 U.S.C. § 1983. Plaintiff Parnell McKay is an inmate of the Florida Department of Corrections (FDOC). His second amended complaint asserts Eighth Amendment claims of excessive force against two FDOC officers, Defendants Tona and Estep. (Doc. 14).[1] Defendants moved for summary judgment (Doc. 47), Plaintiff responded in opposition (Docs. 53, 54, 55, 56, 58), and Defendants replied (Doc. 57). For the reasons below, Defendants' motion for summary judgment should be granted.

---

[1] Plaintiff named a third Defendant, the Warden of Santa Rosa C.I., but the Court previously dismissed all claims against that Defendant and terminated him from this lawsuit. (Doc. 23). The Court also dismissed Plaintiff's Fourteenth Amendment claims of deliberate indifference against Defendants Tona and Estep. (*Id.*).

1

## I.   Factual Background

### A.   Plaintiff's version of events[2]

On July 19, 2021, between approximately 8:25 a.m. and 9:15 a.m., Plaintiff was in a holding cell awaiting a new cell assignment. (Doc. 53 at 3; Doc. 56 at 2-3). Defendant Tona ordered him to submit to an unclothed search. (Doc. 14 at 5; Doc. 53 at 3; Doc. 56 at 2). Plaintiff alleges he fully complied with all orders, stripped to his boxer shorts, and was searched. (*Id.*). He alleges Defendant Tona then said, "Here, Estep, you mace this Fuck boy" and handed Defendant Estep a canister of chemical agent. (Doc. 14 at 5; Doc. 53 at 3; Doc. 54 at 3; Doc. 56 at 2-3). Plaintiff alleges Defendant Estep took the canister and gratuitously sprayed his body with chemical agent. (Doc. 14 at 5, 7-8; Doc. 53 at 3; Doc. 54 at 3; Doc. 56 at 3). Plaintiff alleges Tona then said, "Fuck boy, we should beat your ass." (Doc. 14 at 5; Doc. 53 at 3; Doc. 54 at 3; Doc. 56 at 3). Plaintiff was provided a decontamination shower and then a post-use of force medical exam. (Doc. 14 at 5; Doc. 53 at 3; Doc. 56 at 3).

---

[2] Plaintiff's version of events is taken from the second amended complaint and his documents opposing Defendants' motion for summary judgment. (Docs. 14, 53, 54, 55, 56). He signed all of those documents under penalty of perjury. (*Id.*).

He alleges he sustained physical and emotional injuries as a result of the use of chemical agent. (Doc. 14 at 9).

Plaintiff has brought Eighth Amendment excessive force claims against Defendants. (Doc. 14 at 7-8). He seeks punitive and compensatory damages, among other relief. (*Id.* at 8-9).

### B. Defendants' version of events

The use of force at issue occurred while Plaintiff was in a holding cell while being reassigned from general population to confinement. (Doc. 47-2 at 13 (indicating Plaintiff's housing status as "Gen Pop" one hour prior to the use of force); Doc. 47-3 at 10 (indicating Plaintiff's housing status as "Confinement" at the time of the use of force)). Defendants allege Plaintiff initially complied with Lieutenant Neel's orders to submit to the unclothed search by removing his clothing but then refused orders to remove a watch from his wrist. (Doc. 47 at 4-5; Doc. 47-3 at 1-3, 10-11). Defendants allege Defendant Estep applied three one-second bursts of Oleoresin Capsicum (OC) spray through the grate of the holding cell door. (*Id.*). Minutes later, Plaintiff relinquished the watch. (*Id.*). The unclothed search resumed and was completed. (*Id.*). Plaintiff was then escorted to a cold shower chamber for

3

decontamination of the chemical agent. (*Id.*). Officers determined that the watch belonged to another inmate and was contraband. (*Id.*). Defendants allege Plaintiff's medical records show he did not suffer more than *de minimis* injury as a result of the use of chemical agent. (Doc. 47 at 20; Doc. 47-5 at 3). In support of their motion for summary judgment, Defendants submitted sworn use of force incident reports, video evidence, and medical records. (Docs. 47-3, 47-5 , 48).

### C. Video evidence

Defendants have provided a video (with audio) from a hand-held camera depicting Defendant Estep's use of chemical agent against Plaintiff. (Doc. 47-4; Doc. 48). The video is not time-stamped, so the Court refers to the stopwatch of the video player which times the video in minutes and seconds (00:00). Here is what the video shows.

Lieutenant J. Neel (a non-party)[3] approaches the holding cell where Plaintiff is temporarily housed and asks Plaintiff if he will comply with all orders. (Doc. 48, 00:01-01:08). Plaintiff agrees to comply. (01:09). Lt. Neel orders Plaintiff to submit as Defendant Tona and Officer Windley

---

[3] Lieutenant J. Neel is identified by his name tag in the video and his role as supervising officer in the use of force incident reports.

(a non-party)[4] remove his ankle and wrist restraints. (04:20-06:07). Plaintiff complies as officers remove the restraints. (*Id.*). Lt. Neel then orders Plaintiff to remove his clothing and move in specific ways to facilitate the unclothed visual body search. (06:09-07:16). Plaintiff complies until Neel orders him to remove the watch from his wrist. (*Id.*). Lt. Neel orders Plaintiff to remove the watch: "Let me see your watch. Take your watch off. Take your watch off. Take your watch off." (07:16-07:30). Plaintiff refuses to take off the watch. (*Id.*).

Lt. Neel then directs Defendant Estep to administer OC spray through the metal grate of the cell door. (07:30-07:40). Defendant Estep applies three one-second bursts of OC spray into the holding cell. (07:42-7:45). All of the officers, except the camera operator (a non-party officer), leave the camera's view. (07:45-08:00). Neither Defendant Tona nor any other officer utters the vulgarities and threats that Plaintiff alleges he heard. Two more minutes into the video, a watch is visible on Plaintiff's right wrist. (09:50-09:54). Approximately three and a half minutes after

---

[4] Officer Windley is identified from the use of force incident reports. (Doc. 47-3 at 5).

Defendant Estep applied the OC spray, Plaintiff removes the watch and a necklace and places them on the cell floor. (11:10-11:15).

Within two minutes of Plaintiff's relinquishing the items, Lt. Neel, Defendant Tona, and Officer Windley return to the cell front. (12:41). Plaintiff fully complies with the unclothed body search. (12:46-13:36). The officers secure Plaintiff with restraints and escort him to a cold water shower to wash off the OC spray. (13:43-20:10). He is instructed to shower until he feels relief from the OC spray. (20:10). After a five-minute shower, the officers provide a clean pair of boxer shorts, reapply ankle and wrist restraints, and escort Plaintiff to the medical department for an exam. (26:32-31:50). After the medical exam, the officers escort Plaintiff to his newly assigned cell. (31:50-33:30).

## II. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id*.

At bottom, the summary judgment question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When answering that question, courts view the evidence in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007). But the nonmoving party bears the burden of coming forward with sufficient evidence on each element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A mere "scintilla" of evidence is insufficient to meet that burden. *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). Likewise, speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

When the plaintiff's version of events is "blatantly contradicted" by the record, a court "should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. Thus, when a video recording of an incident clearly contradicts the

7

plaintiff's version of events, the court views the evidence in the light depicted by the video. *Id.* at 380-81.

To determine what facts are "material" at the summary judgment stage, courts look to the substantive law. *Anderson*, 477 U.S. at 248. Completing that task here requires an examination of the law governing Eighth Amendment claims of excessive force.

### III.  Discussion

Plaintiff claims Defendants Tona and Estep violated the Eighth Amendment by using excessive force against him—namely, gratuitously applying OC spray even though he was fully complying with orders. (Doc. 14 at 5, 7-8).

Defendants argue that the video footage shows that the use of OC spray was necessary because Plaintiff refused to comply with the order to remove the watch during the unclothed search. (Doc. 47 at 5-13). They also argue they are entitled to qualified immunity because they did not violate Plaintiff's Eighth Amendment rights or any clearly established law. (*Id.* at 13-17).[5]

---

[5] Defendants make additional arguments about Plaintiff's inability to recover compensatory and punitive damages. (Doc. 47 at 17-29). The

"Qualified immunity shields public officials from liability for civil damages when their conduct does not violate a constitutional right that was clearly established at the time of the challenged action." *Echols v. Lawton*, 913 F.3d 1313, 1319 (11th Cir. 2019) (cleaned up). The rationale behind the doctrine is the balancing of "two important public interests: the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Davis v. Waller*, 44 F.4th 1305, 1312 (11th Cir. 2022) (cleaned up). Under the balance that qualified immunity strikes, "all but the plainly incompetent or those who knowingly violate the law" enjoy its protection. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To receive qualified immunity, an officer "bears the initial burden to prove that he acted within his discretionary authority." *Dukes v. Deaton*, 852 F.3d 1035, 1041 (11th Cir. 2017). The plaintiff then bears the burden of proving that the officer "violated a constitutional right" and "the right was clearly established at the time of the violation." *Barnes v.*

---

Court need not address the issue of damages because Defendants are entitled to summary judgment on the issue of liability.

*Zaccari*, 669 F.3d 1295, 1303 (11th Cir. 2012).  Here, Plaintiff does not dispute that the officers were engaged in discretionary functions, meaning he bears the burden of proving that they were not entitled to qualified immunity.

The "core judicial inquiry" in considering an Eighth Amendment claim of excessive force is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson v. McMillian*, 503 U.S. 1, 7 (1992); *see also Whitley v. Albers*, 475 U.S. 312, 319-21 (1986).  "When prison officials maliciously and sadistically use force to cause harm," the Supreme Court recognized, "contemporary standards of decency always are violated . . . . whether or not significant injury is evident."  *Hudson*, 503 U.S. at 9.

To determine whether the application of force was done in good faith or maliciously and sadistically, courts are required to consider four factors:  "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat reasonably perceived by responsible officials; and (4) any efforts made to temper the severity of the forceful response."  *Ledlow v. Givens*, 500 F. App'x 910, 912-13 (11th Cir. 2012) (citing *Whitley*, 475 U.S. at 321).  From the

consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321. In cases where a collective use of force is alleged, the court need not analyze separately the force administered by each officer to determine which of the blows or other acts, if any, constituted the use of excessive force. *Skrtich v. Thornton*, 280 F.3d. 1295, 1302 (11th Cir. 2002).

"[T]he extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." *Hudson*, 503 U.S. at 7 (cleaned up). The extent of injury may also provide some indication of the amount of force applied. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). As the Supreme Court stated in *Hudson*, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. An inmate who has brought an excessive force claim "may avoid summary judgment only if the evidence viewed in the light most favorable to him goes beyond a mere dispute over the reasonableness of the force used and will support

11

a reliable inference of wantonness in the infliction of pain." *Ledlow*, 500 F. App'x at 913 (internal quotations omitted).

Applying the factors set forth above, Defendants are entitled to qualified immunity because the evidence viewed in the light depicted in the video does not support a reliable inference of wantonness in the use of force. The video evidence clearly shows that Plaintiff was given not one, not two, but three direct orders to remove the watch from his wrist to complete the unclothed search. Plaintiff refused to comply with those orders, and his refusal prevented officers from completing his housing reassignment. Defendant Estep applied three one-second bursts of OC spray. Once the spray had the desired effect of compelling Plaintiff's compliance with the orders to remove the watch and complete the unclothed search, Plaintiff was removed from the contaminated cell, provided a cold water shower to relieve the uncomfortable effects of the OC spray, given a clean pair of boxer shorts, and seen my medical staff. Considering this evidence, no rational juror could find Defendants acted with the wantonness and maliciousness required for an Eighth

Amendment violation.[6]  *See Burke v. Bowns*, 653 F. App'x 683, 696 (11th Cir. 2016) (holding that "no reasonable jury could find" that corrections officers used pepper spray "maliciously and sadistically to cause harm" where pepper spray was administered after the inmate refused to comply with orders).  The Court will now explain why each of the factors identified above weigh in Defendants' favor.

Looking first to the need for the application of force, this factor favors Defendants.  This is so because officers were attempting to reassign Plaintiff to a new cell, and the video clearly shows that Plaintiff

---

[6] Plaintiff's evidence opposing summary judgment includes a declaration of inmate Shaquon R. Johnson.  (Doc. 58).  Inmate Johnson describes Lieutenant Neel's use of chemical agent on him one year prior to the use of force on Plaintiff.  (*Id.*).  Johnson alleges Neel instructed officers to spray him with chemical agent for disorderly conduct even though he was not being disorderly.  (*Id.*).  Johnson also alleges Neel forced him to give up his wrist watch and never returned it.  (*Id.*).

Inmate Johnson's affidavit does not create a genuine issue of material fact in this case.  That is because the video evidence clearly shows that OC spray was applied in response to Plaintiff's refusal to comply with Lieutenant Neel's lawful order to submit all articles of clothing and property during the unclothed body search.  *See* Fla. Admin. Code R. 33-602.204(2)(b) (requiring an unclothed body search when an inmate is placed in any confinement status); *id.*, § 33-602.204(2)(e) (describing the procedures to be followed when conducting an unclothed body search, including that the inmate will remove all clothing, and "[e]very article of clothing and personal property will be thoroughly searched.").

was preventing the reassignment by refusing to comply with clear orders to relinquish the wrist watch to facilitate the unclothed search. Enforcing compliance with orders is a valid penological reason for the use of OC spray. *See Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008) (holding that the need for using a three- to five-second burst of pepper spray was established by the undisputed evidence that the inmate twice disobeyed an officer's commands), *overruled in part on other grounds as recognized by Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010); *see also Orange v. Prescott*, No. 22-10955, 2024 WL 1156573, at *6 (11th Cir. Mar. 18, 2024) (holding that officer's use of OC spray against inmate who refused and questioned officer's order was justified).

The Court now moves to the second and third factors, which are "the relationship between that need and the amount of force used," and "the threat reasonably perceived by responsible officials." When evaluating these factors, a court should "weigh the prison's security interest in maintaining order against the force used against" the inmate. *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). Courts must give a wide range of deference to prison officials acting to preserve

discipline and security. *Sears v. Roberts*, 922 F.3d 1199, 1205 (11th Cir. 2019).

A refusal to follow orders could disrupt prison operations, and "[i]f the operations of a prison are disturbed, there is the potential for great risk to the safety of all involved." *See White*, 2016 WL 4787281, at *6. The Eleventh Circuit held in *Danley* that a three- to five-second burst of pepper spray "[wa]s not disproportionate to the need to control an inmate who ha[d] failed to obey a jailer's orders" to return to his cell. *Danley*, 540 F.3d at 1304, 1307. Rather, the court explained that the short burst of pepper spray was "a reasonable response to th[e] threat" of an inmate "creat[ing] a disturbance by failing to obey orders." *Id.* at 1308; *see also Orange*, 2024 WL 1156573, at *6 (explaining that the Eleventh Circuit has recognized that pepper spray is an accepted non-lethal means of controlling unruly inmates) (citation omitted). As in *Danley*, the three one-second bursts of OC spray used in this case were not disproportionate to the need to control an inmate refusing to comply with orders.

Additionally, the minor nature of Plaintiff's injuries supports the finding that the three one-second bursts of OC spray were a minimal amount of force. *Logan v. Smith*, 439 F. App'x 798, 800 (11th Cir. 2011)

(explaining that "the extent of injury is a relevant factor in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied."); *see also White*, 2016 WL 4787281, at *6 (explaining that "[w]hile injury and the amount of force are imperfectly correlated, here the indisputably minimal injuries that Plaintiff suffered reveal that Defendant only applied minimal force."). Plaintiff's complaint includes a conclusory and vague allegation that he suffered physical injury from the OC spray. (Doc. 14 at 9). The video shows that he suffered a minor nose bleed and occasional coughing. Plaintiff's medical records show that he did not report any injuries from the OC spray, and medical staff did not observe any injuries. (Doc. 47-5 at 2-3, 50).[7]

Plaintiff's refusal to relinquish the watch from his wrist prevented Defendants from completing Plaintiff's housing reassignment. Defendants reasonably could have believed that some level of force was

---

[7] Approximately one hour prior to the use of OC spray, Plaintiff was involved in a separate use of force for which he received medical treatment for an abrasion and hematoma to his forehead, swelling to his nasal area, a small lower lip laceration, and a posterior right ear hematoma. (Doc. 47-5 at 2-3, 48-49, 51-53). Plaintiff later sought additional treatment for injuries sustained from that use of force. (*Id.* at 2-3, 46-47). That use of force is not at issue in this case.

justified to restore discipline and preserve institutional security. Thus, the second and third factors weigh in Defendants' favor. *See Carter v. McCullen*, No. 22-10499, 2023 WL 6120616, at *5 (11th Cir. Sept. 19, 2023) (holding that the second and third factors of the excessive force analysis weighed in the officers' favor because the use of three one-second bursts of chemical spray was not disproportionate to the need to control inmates' disorderly behavior and was a reasonable response to the threat of a disturbance created by inmates' failure to obey orders); *see also Burke*, 653 F. App'x at 697 (holding that the "amount of force was proportional to the degree of risk posed" where officers used pepper spray on an inmate who refused orders to submit to handcuffs).

Looking finally to the fourth factor—efforts made to temper the severity of the use of force—it also weighs in Defendants' favor. The effects of the OC spray were tempered by the officers' resuming the unclothed search very shortly after Plaintiff relinquished the watch and then removing Plaintiff from the contaminated cell and providing a cold water decontamination shower. Plaintiff was then provided a medical exam. These efforts to temper the severity of the use of force are something the Eleventh Circuit has considered when evaluating this

17

factor. *See Cockrell v. Sparks*, 510 F.3d 1307, 1312 (11th Cir. 2007) (stating that the prison guards' summoning of medical assistance for the inmate "tempered the severity of the forceful response and [made] it less likely that either of them was acting sadistically instead of in good faith") (cleaned up); *Orange*, 2024 WL 1156573, at *5-6 (stating that officers' taking inmate to a nurse and then permitting him to shower and decontaminate suggested an effort to temper the severity of the use of chemical spray); *Carter*, 2023 WL 6120616, at *5 (stating that officers' permitting inmate to cover his face, wash the affected areas of his body, and receive medical care after the use of chemical spray weighed in favor of officers in excessive force analysis). The fourth factor therefore weighs in favor of Defendants.

Having considered all the factors, the Court finds that no reasonable juror could conclude that Defendants applied force "maliciously and sadistically to cause harm." *Ledlow*, 500 F. App'x at 912. What happened in this case is a far cry from the type of egregious conduct that violates "contemporary standards of decency" as required for an Eighth Amendment violation. *See Hudson*, 503 U.S. at 9. Because the evidence in the record will not "support a reliable inference of

wantonness in the infliction of pain . . . the case should not go to the jury." *Whitley*, 475 U.S. at 322. Defendants, therefore, are entitled to summary judgment on Plaintiff's excessive force claims.

## IV. Conclusion

For the reasons above, it is respectfully **RECOMMENDED** that:

1. Defendants' motion for summary judgment (Doc. 47) be **GRANTED**.

2. The Clerk of Court be directed to enter judgment accordingly and close this case.

At Pensacola, Florida this 1st day of November 2024.

/s/ *Zachary C. Bolitho*
Zachary C. Bolitho
United States Magistrate Judge

### Notice to the Parties

Objections to these proposed findings and recommendations must be filed within fourteen days of the date of this Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.